IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

HONORHEALTH, *Petitioner,*

*v.*

AMIRA ABBOUD; JETT WEINSTEIN, *Respondents.*

No. 1 CA-SA 25-0331

FILED 02-24-2026

Petition for Special Action from the Superior Court in Maricopa County
No. CV2025-001415
The Honorable Christoper Whitten, Judge
The Honorable Michael S. Mandell, Judge

**JURISDICTION ACCEPTED; RELIEF DENIED**

COUNSEL

Murphy Cordier Casale Axel P.L.C., Phoenix
By Richard M. Amoroso, Jennifer J. Axel, and Maria F. Hubbard
*Co-Counsel for Petitioner HonorHealth*

Quarles & Brady L.L.P., Phoenix
By John M. O'Neal and Lauren Elliott Stine
*Co-Counsel for Petitioner HonorHealth*

The Slavicek Law Firm, Phoenix
By Brett L. Slavicek, James E. Fucetola, and Justin Henry
*Co-Counsel for Respondents Amira Abboud and Jett Weinstein*

The Palumbo Law Firm, Phoenix
By Scott I. Palumbo
*Co-Counsel for Respondents Amira Abboud and Jett Weinstein*

---

## OPINION

Judge Andrew M. Jacobs delivered the opinion of the Court, in which Presiding Judge D. Steven Williams and Judge Veronika Fabian joined.

---

**J A C O B S**, Judge:

**¶1**         Petitioner HonorHealth, a defendant in a putative class action challenging the content and validity of its medical liens, asks us to exercise our discretionary special action jurisdiction to review the superior court's order denying its motion to dismiss the action under Arizona Rule of Civil Procedure 12(b)(6).  We accept jurisdiction because HonorHealth's petition presents a novel legal issue of statewide importance, the resolution of which will materially advance the efficient management of this case.  *See* Ariz. R.P. Spec. Act. 12(b)(3), (4), (7).

**¶2**         The question is whether A.R.S. § 33-932(B) requires a "verified statement" as to whether a person's medical treatments were terminated or continuing, or whether instead, as HonorHealth argues, listing their dates of treatment on the liens (which A.R.S. § 33-932(A) requires) fulfills A.R.S. § 33-932(B), making that verified statement unnecessary.  Because the superior court correctly concluded that HonorHealth's liens improperly omitted the verified statement A.R.S. § 33-932(B) requires, we deny relief.

## FACTS AND PROCEDURAL HISTORY

A.     **Plaintiffs Abboud and Weinstein Are Treated at HonorHealth Hospitals, Resulting in Recorded Medical Liens of $95,972 and $1,202,789.**

**¶3**         On May 3, 2022, plaintiff Amira Abboud was struck by a vehicle while jogging in a crosswalk.  Abboud suffered severe injuries and received medical treatment at HonorHealth's Scottsdale Osborn Medical Center until she was discharged on May 4, 2022.  On May 11, 2022, HonorHealth recorded a health care provider lien relating to its treatment of Abboud for $95,972.

¶4         On February 4, 2024, plaintiff Jett Weinstein was severely injured in a car accident and admitted to HonorHealth's Deer Valley Medical Center, where he was treated from February 4 through 27, and again on March 21. HonorHealth recorded a health care provider lien relating to his treatment over those dates for $1,202,789.73.

¶5         The liens concerning Abboud's and Weinstein's treatments contained their respective names and addresses, the treatment dates associated with those liens, and the names and locations of the Osborn and Deer Valley Hospitals. The liens, however, did not state whether the medical care they received was terminated or continuing.

### B.     After Abboud and Weinstein Settle Their Personal Injury Claims, HonorHealth Declines Their Counsels' Requests To Release its Liens.

¶6         In November 2024, Abboud settled her claim against the driver who hit her, and the settlement proceeds were placed in her attorney's trust account. Weinstein likewise settled the claim from his accident, and the proceeds were placed in his attorney's trust account.

¶7         HonorHealth's lien by its nature limited Abboud's degree of access to her settlement funds, so Abboud's counsel asked HonorHealth to release the lien. Counsel argued it violated A.R.S. § 33-932(B), which requires liens to include a "verified statement" as to whether a patient's treatment is terminated or continuing. HonorHealth responded that its lien was valid and, without releasing it, offered to accept satisfaction of part of its lien as a compromise. Abboud rejected that offer and sued HonorHealth, contending the lien violated A.R.S. § 33-932(B).

¶8         Weinstein had a comparable experience. His counsel requested a release of his lien, arguing it didn't comply with A.R.S. § 33-932(B). HonorHealth declined to release the lien. But when HonorHealth recorded another lien against Weinstein for medical services he received on March 21, 2024, it included this additional language it had not employed in the first lien: "Pursuant to A.R.S. § 33-932(B), the patient's care with respect to the treatment subject to this lien has terminated as of the date of this recording."

### C. After Abboud and Weinstein Bring a Putative Class Action Against HonorHealth, It Releases Its Lien Against Abboud and Moves to Dismiss Their Suit.

**¶9**       Abboud, later joined by Weinstein, sued HonorHealth, seeking declaratory and injunctive relief, and to certify her claim as a class action. Months later, on the day HonorHealth's responsive pleading was due, HonorHealth released its lien on Abboud's proceeds. Their first amended complaint calls this a "transparent attempt" to defeat jurisdiction, adding HonorHealth has a pattern of releasing liens when faced with class action suits.

**¶10**       Abboud and Weinstein allege HonorHealth's liens kept them from accessing funds that belong to them. They allege HonorHealth used a fillable form document for its liens for years that did not comply with A.R.S. § 33-932(B)'s requirement of a verified statement as to whether treatment ended or continued, making those liens invalid and unenforceable. They also allege HonorHealth has not released Weinstein's lien.

### D. HonorHealth Moves to Dismiss.

**¶11**       HonorHealth moved to dismiss Abboud and Weinstein's first amended complaint for lack of standing, mootness, and failure to state a claim upon which relief could be granted. *See* Ariz. R. Civ. P. 12(b)(6). HonorHealth argued that, after it released Abboud's lien, no justiciable controversy between Abboud and HonorHealth remained. HonorHealth also argued both Abboud and Weinstein lacked standing to object to its liens on their settlement proceeds because such liens are not directly enforced against patients. And HonorHealth argued its liens complied with A.R.S. § 33-932(B) by providing a range of treatment dates as A.R.S. § 33-932(A) requires.

**¶12**       HonorHealth further argued that A.R.S. § 33-932(B)'s requirement only applies to non-hospital providers that seek to record "liens for continuing care," not to hospitals that have discharged their patients. In arguing for a hospital exception to the requirements of A.R.S. § 33-932(B), HonorHealth pointed to A.R.S. § 33-932(A)'s distinction between hospital and non-hospital providers for timing purposes, and to the Arizona Supreme Court's discussion of that distinction in *Premier Physicians Group, PLLC v. Navarro*, 240 Ariz. 193, 196 ¶ 17 (2016).

**E.    The Superior Court Denies HonorHealth's Motion to Dismiss.**

¶13    The superior court denied HonorHealth's motion to dismiss. The court found a justiciable controversy, as Abboud and Weinstein alleged HonorHealth's liens obstruct their "right to receive third-party settlement proceeds." This created a specific, concrete, and adversarial dispute. The court also found HonorHealth's release of its lien on Abboud's proceeds after she filed her complaint did not make her claim moot, as she was subject to the lien when she filed suit.

¶14    The court applied A.R.S. § 33-932(B) to HonorHealth's liens relating to the Plaintiffs' medical care. It held that the subsection's "verified statement" requirement was not an "inconsequential technicality," but a "material condition designed to ensure transparency and prevent misuses of lien rights." The court concluded HonorHealth's liens, by omitting the language A.R.S. § 33-932(B) requires, supported the Plaintiffs' claims that the liens were void.

¶15    The court rejected HonorHealth's argument that including discharge dates or dates of service in the liens (as A.R.S. § 33-932(A) requires) satisfied A.R.S. § 33-932(B)'s requirement of a separate verified statement that treatment was continuing or terminated. The court reasoned that because subsections (A) and (B) contain requirements that are described separately and distinctly, HonorHealth's argument that complying with subsection (A) automatically fulfills subsection (B) would render subsection (B)'s requirement superfluous.

**F.    The Superior Court Designates the Case for Special Action Review Under Special Action Rule 13.**

¶16    HonorHealth moved for reconsideration. Alternatively, HonorHealth requested the superior court designate questions for special action review under Rule 13. *See* Ariz. R.P. Spec. Act. 13. The court denied the motion for reconsideration. But it found the case presented legal issues regarding A.R.S. § 33-932(B) that justified special action review, and designated those issues for special action review under Rule 13. *See* Ariz. R.P. Spec. Act. 13. This special action followed.

## DISCUSSION

### I.  Rule 12 of Special Action Procedure Supports the Exercise of Our Discretionary Jurisdiction.

**¶17**     Special action jurisdiction is "highly discretionary." *State ex rel. Adel v. Hannah in & for Cnty. of Maricopa*, 250 Ariz. 426, 429 ¶ 7 (2020). We may exercise it when a petitioner lacks an "equally plain, speedy, and adequate" remedy by appeal, a determination we make by applying the factors in Rule 12(b) of Special Action Procedure. Ariz. R.P. Spec. Act. 12(a). The first factor to which Rule 12 directs us is whether the superior court judging the matter has designated it under Rule 13 as one it requests we review. Ariz. R.P. Spec. Act. 12(b)(1), 13. The superior court did so here, finding this complex class action presents novel legal issues concerning A.R.S. § 33-932(B) appropriate for special action review.

**¶18**     We agree with the superior court and find that factors (3), (4), and (7) in Special Action Rule 12 likewise support review. *See* Ariz. R.P. Spec. Act. 12(b)(3), (4), (7). There is no controlling precedent addressing whether, notwithstanding certain language in A.R.S. § 33-932(A), A.R.S. § 33-932(B) requires a separate "verified statement" declaring whether a patient's treatment at a hospital is terminated or continuing, making this an issue of first impression. *See* Ariz. R.P. Spec. Act. 12(b)(3). As HonorHealth notes, the Arizona Supreme Court recognizes that "the proper interpretation of the health care provider lien statutes is a matter of statewide importance." *Blankenbaker v. Jonovich*, 205 Ariz. 383, 385 ¶ 7 (2003); *see* Ariz. R.P. Spec. Act. 12(b)(4). The legal question we review today is foundational to this putative class action, so addressing it now will materially advance the efficient management of this case. *See* Ariz. R.P. Spec. Act. 12(b)(7). For these reasons, we exercise our discretionary jurisdiction.

### II.  A.R.S. § 33-932(B) Requires Hospitals to Provide a Separate Affirmative Statement Indicating Whether a Person's Care Has Terminated or Is Continuing.

**¶19**     We review the denial of a motion to dismiss under Rule 12(b)(6) *de novo*, because it presents questions of law. *Coleman v. City of Mesa*, 230 Ariz. 352, 356 ¶ 9 (2012). Dismissal is only appropriate if, as a matter of law, "the plaintiffs would not be entitled to relief under any interpretation of the facts." *State ex rel. Brnovich v. Arizona Bd. of Regents*, 250 Ariz. 127, 130 ¶ 7 (2020). We look to the operative pleading and "assume the truth of all well-pleaded factual allegations and indulge all reasonable inferences from those facts." *Id.*

¶20        HonorHealth asks us to reverse the superior court's denial of its motion to dismiss by holding that its medical liens recorded against Abboud's and Weinstein's proceeds were valid.  HonorHealth argues its liens satisfied A.R.S. § 33-932(B)'s requirement to state whether a patient's treatment was terminated by complying with A.R.S. § 33-932(A)'s requirement that they state the date-range during which HonorHealth provided the services giving rise to the liens.  HonorHealth also argues A.R.S. § 33-932(B) does not apply to hospitals, but only to liens for "continuing care" – which it argues hospitals don't provide – thus exempting its liens from having to comply with A.R.S. § 33-932(B).  Abboud and Weinstein counter that A.R.S. § 33-932(A) and A.R.S. § 33-932(B) are separate, so complying with one subpart is not complying with both.  They also argue that A.R.S. § 33-932(B) contains no "hospital exception" entitling HonorHealth to omit from its medical liens the separate statement about patient care A.R.S. § 33-932(B) requires.  As we explain next, Abboud and Weinstein are right on both points.

### A. The Superior Court Did Not Err in Finding HonorHealth's Liens Did Not Comply With A.R.S. § 33-932(B), Even Though the Liens Did Comply With A.R.S. § 33-932(A).

¶21        We interpret statutes by construing words in "their ordinary meaning unless it appears from context" that the legislature clearly intended another special meaning. *Arizona ex rel. Brnovich v. Maricopa Cnty. Cmty. Coll. Dist. Bd.*, 243 Ariz. 539, 541 ¶ 7 (2018).  When statutory language is unambiguous, "we must give effect to that language" and do not resort to other rules of construction. *McKenna v. Soto*, 250 Ariz. 469, 472 ¶ 12 (2021).  When interpreting related provisions, we construe them in a way that gives effect to all provisions involved; we avoid interpretations that render provisions "meaningless, unnecessary, or duplicative." *Arizona Dep't of Revenue v. Action Marine Inc.*, 218 Ariz. 141, 143 ¶ 10 (2008); *see Fann v. State*, 251 Ariz. 425, 434 ¶ 25 (2021) ("We also avoid interpreting a statute in a way that renders portions superfluous.").

¶22        HonorHealth argues that a lien satisfies A.R.S. § 33-932(B)'s requirement to state "whether the patient's treatment has been terminated or will be continued" if it includes dates or ranges of treatment, as required by A.R.S. § 33-932(A)(4).  HonorHealth contends that providing those "dates or ranges" is akin to having provided a statement that the patient's treatment has been terminated.  Thus, according to HonorHealth, compliance with subsection (A) necessarily satisfies subsection (B), and "there's no logical reason to require a hospital to do both."

¶23        The problem with HonorHealth's argument is that the legislature requires it to do both. When a statute sets out two things separately, we interpret that statute starting from the view that listing them separately was intentional, and that we should not view them as duplicative, or one of the two separate things as unnecessary surplusage. *See Action Marine*, 218 Ariz. at 143 ¶ 10.

¶24        The statute's plain language reinforces that the two subparts of A.R.S. § 33-932, (A) and (B), are separate and contain different requirements that serve different purposes. Section 33-932(A) requires a provider to list, within a verified statement, certain information within the lien, including dates of treatment for the particular liened services. Section 33-932(B) then says the verified statement "shall also" include a statement "regarding whether the patient's treatment has been terminated or will be continued." Furthermore, listing treatment dates, as A.R.S. § 33-932(A) requires, does not foreclose the possibility that a patient may return for additional care that could be subject to additional liens, as Abboud and Weinstein correctly note.

¶25        A.R.S. § 33-932(B) is different, and addresses that possibility. It goes further than A.R.S. § 33-932(A) and requires additional information regarding the status of the patient's treatment as a whole. Section 33-932(B) ensures that entities reviewing a patient's medical liens know whether additional liens may arise in the future from further treatment that will represent claims on potential settlement funds. Compliance with A.R.S. § 33-932(A), which concerns only the dates of treatment giving rise to one discrete lien, does no such thing, reinforcing that subparts (A) and (B) have different meanings, purposes, and operation. Accordingly, A.R.S. § 33-932(B) requires a separate statement indicating whether a person's treatment has terminated or is continuing.

¶26        For the same reasons we reject HonorHealth's argument that compliance with A.R.S. § 33-932(A) is compliance with A.R.S. § 33-932(B), we likewise reject the argument that one can "substantially comply" with A.R.S. § 33-932(B) by simply stating in medical liens the date ranges A.R.S. § 33-932(A) requires. As we have explained, listing the information required by A.R.S. § 33-932(A)(4) does not comply with A.R.S. § 33-932(B). Were it otherwise, the claim of substantial compliance here would undo the surplusage canon. *See Action Marine*, 218 Ariz. at 143 ¶ 10. Stated differently, if complying with A.R.S. § 33-932(A) isn't compliance with A.R.S. § 33-932(B) because that would render A.R.S. § 33-932(B) surplusage, then neither can complying with A.R.S. § 33-932(A) amount to kind-of compliance with A.R.S. § 33-932(B).

**B.      The Superior Court Did Not Err in Denying the Motion to Dismiss Because A.R.S. § 33-932(B) Does Not Provide for a Hospital Exception and Does Not Apply Only to Those Providing Continuing Care.**

¶27      HonorHealth next asks us to reverse the superior court's denial of its motion to dismiss by arguing A.R.S. § 33-932(B) does not apply to hospitals.  HonorHealth argues that applying A.R.S. § 33-932(B) to it conflicts with a distinction it believes A.R.S. § 33-932 draws between hospitals and non-hospitals.  HonorHealth derives this interpretation from language in A.R.S. § 33-932(A), and from the distinction the Arizona Supreme Court drew between hospital and non-hospital providers in *Premier*, 240 Ariz. at 196 ¶ 17.  On that basis, HonorHealth argues that A.R.S. § 33-932(B) governs only liens for "continuing care," which it claims hospitals do not provide.  Abboud and Weinstein respond that there is no "hospital exception" in A.R.S. § 33-932(B), and they are right again.

¶28      In considering whether A.R.S. § 33-932(B) contains a hospital exception, we again note that we construe statutes to give effect to all of their provisions, and avoid interpretations that render provisions "meaningless, unnecessary, or duplicative." *Action Marine*, 218 Ariz. at 143 ¶ 10.  In a related vein, when the legislature takes care to provide for an exception within a statute, that creates a strong inference that the legislature intended to create no other such exception. *See Employers Mut. Cas. Co. v. McKeon*, 159 Ariz. 111, 113 (1988).

¶29      Because HonorHealth's argument flows from A.R.S. § 33-932(A), we examine its text to resolve this argument.  As HonorHealth notes, the Arizona Supreme Court recognized that the legislature distinguished between hospital and non-hospital providers within A.R.S. § 33-932(A)'s timing requirements. *Premier*, 240 Ariz. at 196 ¶ 17.  But while the legislature clearly distinguished hospitals from non-hospitals in A.R.S. § 33-932(A) with respect to the timing of the filing of their liens, it included no language exempting hospitals from A.R.S. § 33-932(B)'s additional statement requirement.

¶30      Distinguishing hospitals from non-hospitals in A.R.S. § 33-932(A) - but not in A.R.S. § 33-932(B) - creates a strong inference that A.R.S. § 33-932(B) contains no such distinction. *See McKeon*, 159 Ariz. at 113.  Moreover, A.R.S. § 33-932(B) elaborates what must be put into the verified statement A.R.S. § 33-932(A) requires.  Hospitals are indisputably subject to A.R.S. § 33-932(A), and A.R.S. § 33-932(B) extends the specific requirements

in A.R.S. § 33-932(A), so it does not make sense to read A.R.S. § 33-932(B) as having no application to hospitals, as HonorHealth urges.

¶31    HonorHealth's reliance on the legislature's use of the term "discharged" in A.R.S. § 33-932(A) likewise fails to support a hospital exception to A.R.S. § 33-932(B).  Section 33-932(A) requires a hospital recording a lien to do so within 30 days of when a patient is "discharged," but that does not establish a presumption that a patient will not return for additional care.  Nor does the fact that hospitals typically provide short-term care, which the Arizona Supreme Court observed in *Premier*, 240 Ariz. at 197 ¶ 21, mean they never provide continuing care.

¶32    Finally, HonorHealth's interpretation of A.R.S. § 33-932(B) as limited to "continuing care" liens would render its "has been terminated" language superfluous, something Arizona law prohibits.  *See Fann*, 251 Ariz. at 434 ¶ 25 ("We also avoid interpreting a statute in a way that renders portions superfluous."); *Action Marine*, 218 Ariz. at 143 ¶ 10.  Section 33-932(B) requires that providers include "a statement regarding whether the patient's treatment has been terminated or will be continued."  If A.R.S. § 33-932(B) applied only where treatment will continue, there would be no circumstance in which a provider would be required to state that treatment had ended, rendering that statutory language superfluous.  We must give effect to every word and phrase that the legislature chose to include within a statute and may not adopt an interpretation that reads language out of it. *See Fann*, 251 Ariz. at 434 ¶ 25; *Bell v. Indus. Comm'n*, 236 Ariz. 478, 480 ¶ 7 (2015).  We are not permitted to disregard statutory language requiring a provider to disclose in a lien that it has terminated a patient's care, any more than we could fail to give effect to the language in A.R.S. § 33-932(B) that requires providers to disclose that care is ongoing.  We therefore hold that A.R.S. § 33-932(B) applies to all healthcare providers.

## CONCLUSION

¶33    For these reasons, we exercise our discretionary special action jurisdiction and deny relief, affirming the superior court's denial of HonorHealth's motion to dismiss.